## Butler v. Rolling Hill Hospital

*Lawrence G. Metzger,* for plaintiff.
*Barton L. Post,* for defendant.

LEHRER, *J.,* March 2, 1988 — This is an appeal brought by plaintiff, Sylvia Butler, of this court's January 13, 1988, order granting defendant Dr. Maria Limberakis' motion for summary judgment. Upon review of defendant's motion and response

thereto, and for the reasons herein stated, we respectfully request that said appeal be dismissed.

Briefly stated, the essential facts that gave rise to defendant's motion and plaintiff's subsequent appeal are as follows:

Plaintiff Sylvia Butler went to see defendant, her family physician, in November 1983 and complained of swelling in her breasts, an empty feeling and weight gain. Defendant did not order a pregnancy test as requested by plaintiff nor did she order one when plaintiff requested it again in January 1984. Plaintiff was 24 weeks pregnant when the test was later performed.

Plaintiff had undergone a tubal ligation two years prior to this pregnancy. Plaintiff alleges that she did not want more children. She further alleges that it was too late to legally have an abortion performed at the time plaintiff's pregnancy was confirmed. Thereafter, plaintiff gave birth to a normal, healthy child.

Plaintiff filed suit against Rolling Hill Hospital and Dr. Limberakis. Plaintiff grounds her claim against Dr. Limberakis on the basis of failure to properly diagnose her pregnancy. She seeks to recover for the anxiety she experienced and continues to experience, past and future medical costs, pain and suffering, lost earnings and for the expenses of raising her child.

Conceding the negligence of Dr. Limberakis in failing to perform a pregnancy test as requested by plaintiff, there is no compensable damage that is recoverable.

We conclude that under the law of this commonwealth no damages are due to a parent of a child born healthy, particularly where, as here, the mother's pregnancy did not give rise to a high degree of

medical probability that she would give birth to a disabled or deformed child.

This conclusion is based on a public policy grounded in moral and judicial values. Though we live in a community where societal standards and attitudes have undergone change in comparatively recent years in other respects, the public policy toward the promotion and preservation of life has not changed. The public policy of this state favors the birth of healthy children.

Plaintiff relies on *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981). That case involved a genetically defective child born to parents who, after the prior births of two defective children, sought to avoid further pregnancy. The father underwent a vasectomy and after a pregnancy occurred nevertheless, the mother underwent an abortion which did not result in the termination of the pregnancy.

There the Supreme Court of Pennsylvania held that the parents had a cause of action in tort against the physicians to recover expenses attributable to the birth and raising of the child and for the mental distress and physical inconvenience attributable to the child's birth. The trial court's determination that the child did not have a cause of action against the physicians was affirmed.

*Speck,* in our opinion, is distinguishable from the instant case by the mere recitation of the previous facts.

Also distinguishable is *Mason v. Western Pennsylvania Hospital,* 499 Pa. 484, 453 A.2d 974 (1984). In that case, a healthy baby was born after an allegedly negligently performed tubal ligation. There the Superior Court allowed recovery for medical expenses and lost wages related to prenatal care, delivery and postnatal care and compensation for pain and suffering incurred during the prenatal

through postnatal periods. The financial and emotional costs of raising a healthy child were held not to be compensable.

We distinguish *Mason,* however, from the instant case because in *Mason* the defendants had allegedly performed negligently a procedure which ultimately resulted in the pregnancy. In the instant case, plaintiff had already conceived at the time of her visit to defendant Dr. Limberakis.

No one can know for certain whether one would, in fact, decide to have an abortion until the precise moment of decision is at hand. A decision to have an abortion involves the confluence of several powerful emotions, one of which is love even for an unborn child.

Consequently, to permit a jury to listen to evidence from a plaintiff after the fact as to what she would or would not have done under the present circumstances would be to permit a jury to speculate on a finding rather than arrive at it based on rational evaluation of credible evidence.

Accordingly, we request that this appeal be dismissed.